Bigger, J.
The power of courts; to interfere and examine the grounds upon which the governor of a state has allowed the warrant for the extradition of one of its citizens to another state, is justified by both reason 'and authority. Hawley on Interstate Extradition, p. 28; In re Powell, 20 Fla., 906; People v. Brady, 56 N. Y., 182.
Thus Mr. Iiawley says, p. 28:
“Any other view would make the executive authority omnipotent, and emasculate, to a great extent, the writ of habeas corpm whereby the citizen is assured that he shall not be deprived of his liberty, but by the law of the land. ’ ’
In the case of Work v. Corrington, 34 Ohio St., p. 73, the case of People v. Brady, 56 N. L., above cited, was approved. In the New York case it w-as said:
“Under the Constitution of the United States the obligation of a state to deliver up a fugitive from justice, on demand of the executive authority of another state, arises when the fugitive is charged with crime within the state demanding the surrender and having jurisdiction of the offense. The question of his guilt or innocence is wholly immaterial; but there must be a charge of a violation of the criminal laws of the demanding stale. It is a condition precedent to the obligation to surrender that the executive of the state, upon whom the demand is made, be apprised of the facts upon which the duty deprives. When the demand is supported by an affidavit as authorized * * * no less degree of certainty is admissible than is required in an indictment for the same offense. If any distinction exists the affidavit should be more full 'and explicit and the offense should be therein distinctly -and plainly charged.”
The difference between extradition based on an indictment by a grand jury and on affidavits before a magistrate and the [governor, are well stated by Mr. Hawley, p. 42 -of his- work on Extradition, as follows:
'“Facts are presented to the governor through the medium of ex parf-le affidavits, made frequently as a matter of form, by irresponsible p-ersons, at a long if not a safe distance from the place where the" affidavits are to be used. Every one familiar with the ease with which such affidavits are procured and the carelessness *487 with which they are sworn to, will readily gee that they form a very slender basis for the determination of any question of fact. ’ ’
I think this language applies forcibly to- the affidavits brought here from Illinois to support the extradition of George Fairman from the state of Ohio to the state of Illinois to- answer an alleged crime of rape.
In the first place it should be said that extradition should always be jealously granted and especially so in alleged cases of rape where there has been no investigation by a grand jury, and the warrant has not the foundation of an indictment, and this is especially so- considering that the crime is alleged to have been committed in Chicago where grand juries are in almost continuous session.
Now what is the case upon which the warrant for the arrest and extradition -of Fairman was- granted -by th-e governor of Ohio.
First, there is the affidavit preferring the formal charge of rape, sworn to by Anna Nichols, who does not pretend to have seen the act committed. Then ther-e is another affidavit by Anna Nichols which details certain conditions which she says existed, which if true would show that the -child was -affected with some disease of the blood, not necessarily anything m-ore, and also disclosing alleged confessions by the child made some two months after the alleged rape -and som-e ten days after Fairman had left the state -of Illinois, and his s-ai-d relations to- the -child ceased.
There is also the -affidavit o-f Miss Anne Butts that she -often saw the child in the ro-om of Fairman, and that on one occasion -the -child ran away from the room and that Fairman was excited and 'acted suspiciously, .although no -acts are detailed.
This is virtually all the testimony- offered to the governor to show rape except th-e affidavit of .th-e 'alleged victim, only seven years of age, and that affidavit is in no measure satisfactory. There is nothing in the record to show that this- alleged victim knew the meaning of the words “sexual intercourse” and “carnal knowledge” as used in said affidavit, -and the court will take judicial notice that children seven years of -age do- not know the meaning of such words.
W. E. King, for the state.
G. D. Saviers, contra.
The court finds that the facts necessary to constitute rape are not proved by prima facie evidence. That the use of' the words “sexual intercourse” and “carnal knowledge” coming from one only seven years old do not prove that there w-as the penetration necessary to constitute rape. The want of a physician’s affidavit is very signieant in this matter. Bruises and lacerations would naturally be expected but there is no testimony of any outside of that of the mother and daughter, although, it seems from their testimony a physician was visited.
If the court understands the rule in Ohio- on the subject of extradition, the facts which constitute the crime must be made to appear unless the application is based on an indictment by the grand jury. Work v. Corrington, 34 Ohio St.; People v. Brady, 56 N. C.; Thomas v. Evans, 14 Low D. (Ohio), 336.
This demand is not satisfied by the formal affidavit charging the offense in the language of the statute but must be met by the facts necessary to make out the crime charged.
The court finds that the proceedings are defective in that no competent affidavit or evidence of the crime of rape was summitted to the governor. The court further finds that said proceedings for the extradition of Fairman were not instituted in good faith for the purpose of enforcing’ the criminal laws of Illinois, but for the purpose -of -extorting money- from Fairman. The said Fairman is therefore discharged.